Anthony J. Nunes (SBN 290224)
Nunes Law Group, APC
15260 Ventura Blvd, Suite 1200
Sherman Oaks, CA 91403
Telephone: (855) 422-5529
tony@nunesworkerrightslaw.com

Attorneys for Plaintiff ZOE EVE JUAREZ

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ZOE EVE JUAREZ,

Plaintiff,

vs.

PINK SPONGE, a California corporation, doing business as PINK SPONGE, and DOES 1-10

Defendants.

Case No. 2:26-CV-03353

**COMPLAINT FOR:**

1. Collective Action - Violation of the Fair Labor Standards Act (29 U.S.C. 201, et seq.)
2. Failure to Accommodate
3. Wrongful Termination
4. Violation of the Pregnancy Discrimination Act (ADA)
5. Discrimination in Violation of Public Policy
6. Failure to Pay Minimum Wage
7. Failure to Pay Overtime
8. Failure to Provide Meal Periods
9. Failure to Provide Paid Rest Breaks
10. Failure to Pay All Wages at Termination
11. Violation of Labor Code Section 2699 (PAGA)
12. Unfair Business Practices (Business & Practices Section 17200)

**DEMAND FOR JURY TRIAL**

Plaintiff Zoe Eve Juarez, on behalf of herself, alleges each of these causes of action against Defendants as follows:

## I.

## INTRODUCTION

1. Plaintiff ZOE EVE JUAREZ (hereinafter "Plaintiff") was a "cleaner" for Defendant "PINK SPONGE" (hereinafter "Defendant" or "Pink Sponge") hereinafter "Defendant" or "PINK SPONGE" in Los Angeles, California.

2. On March 27, 2026, Plaintiff filed a claim with the California Department of Fair Employment and Housing ("DFEH"). The DFEH issued an immediate Right to Sue Notice. Accordingly, Plaintiff exhausted her administrative requirements pursuant to California's Fair Employment and Housing Act ("FEHA").

3. Defendants violated California's Labor Code, and California Industrial Welfare Commission (IWC) Wage Order No. 5-2001 (Housekeeping Industry), which include:

a. Failing to pay minimum wage for every hour worked;

b. Failing to pay Plaintiff overtime wage when applicable;

c. Failing to pay Plaintiff premium wages for missed meal periods;

d. Failing to pay Plaintiff premium wages for missed rest periods;

e. Failing to maintain accurate employment records for Plaintiff; and

f. Failing to pay Plaintiff amounts owed at the end of her employment.

4. Plaintiff seeks unpaid wages and penalties for Labor Code violations.

5. Plaintiff further seeks general, special, and compensatory damages owed to Plaintiff for wrongful termination, harassment, retaliation, and discrimination.

## II.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 29 U.S.C. § 206(a)(1).

7. Federal jurisdiction is proper due to Defendants' violations of the minimum wage provision of the U.S. Fair Labor Standards Act. 29 U.S.C. § 206(a)(1). As described herein, Plaintiff alleges Defendants failed to pay any wages for off-the-clock work.

8. Plaintiff alleges that Defendants systematically violate the Fair Labor Standards Act ("FLSA") by failing to provide Plaintiff and other FLSA class members minimum wage for all hours worked.

9. Venue lies within the Central California District because Defendant have and continue to operate in Los Angeles, California in the Central California District. Plaintiff worked in Los Angeles and the injuries that are the subject of this lawsuit arose in Los Angeles County.

## III.

## PARTIES

**Plaintiff**

10. Plaintiff is a resident of Los Angeles County, California. At all relevant times herein, Plaintiff was employed by Defendants as a "cleaner."

11. Plaintiff worked at Pink Sponge until September 2025.

**Defendants**

12. Plaintiff alleges on information and belief that Defendant PINK SPONGE, a California corporation, does business as Pink Sponge ("Defendant" or "Pink Sponge") in Los Angeles County.

13. Pink Sponge is a maid, cleaning service headquartered in Glendora, California.

14. Plaintiff alleges on information and belief that Defendant PINK SPONGE, INC., a California corporation, does business as Pink Sponge ("Defendant" or "Pink Sponge") in Los Angeles County.

15. Plaintiff alleges on information and belief that Defendant PINK SPONGE is a California corporation, does business as Pink Sponge ("Defendant" or "Pink Sponge") in Los Angeles County.

16. Defendants' office at 440 E Route 66, Suite 301, Glendora, CA 91740 is Pik Sponge headquarters.

17. Plaintiff alleges on information and belief that Defendants issues policies and procedures for all non-exempt employees working for Defendant.

18. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued here in as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that Defendants designated herein as DOE(S) are legally responsible in some manner for the unlawful acts referred to herein.

19. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOE(S) when such identities become known.

20. Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff, and exercised control over the wages, hours, and working conditions of Plaintiff.

21. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged.

22. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## IV.
## GENERAL ALLEGATIONS

23. Plaintiff Zoe Eve Juarez was employed by Defendants PINK SPONGE, doing business as PINK SPONGE (hereinafter "Defendants" or "Pink Sponge").

24. Plaintiff worked as a "clean" at Pink Sponge until September 2025. This was Plaintiff's second employment stint at Pink Sponge after voluntarily leaving Pink Sponge when her father passed away in June 2022.

25. Plaintiff worked at Defendant Pink Sponge at 440 E Route 66, Suite 301, Glendora, CA 91740.

26. On September 15, 2025, Plaintiff's counsel, pursuant to California Labor Code § 226, sent a request for Plaintiff's employment records.

27. On October 17, 2025, Plaintiff's counsel sent a follow-up request for Plaintiff's employment records under California Labor Code § 226.

28. The corporate address for PINK SPONGE is listed on California's Secretary of State business record website as the contact information for the registered agent of the corporation.

29. As of filing this complaint, Plaintiff's counsel has not received Plaintiff's paystub or timecards records, despite two letters and several back-and-forth emails with Defendant's owner repeatedly requesting these basic records.

30. On March 27, 2026, Plaintiff filed a case with the California Department of Fair Employment and Housing ("DFEH"). The DFEH issued an immediate Right-to-Sue Notice. Accordingly, Plaintiff exhausted her administrative requirements pursuant to the Fair Employment and Housing Act ("FEHA").

31. October 17, 2025, Plaintiff filed a Private Attorney General Act ("PAGA") Notice with the California Labor and Workforce Development Agency

(LWDA), and served a copy on Defendant's counsel and Defendant's Registered Agent by certified U.S. mail.

32. Defendant holds itself out as a residential cleaning service and provides its cleaners, including Plaintiff, with company vehicles—often painted pink—to travel to and from customers' homes.

33. Plaintiff was required to drive company vehicles that were persistently unsafe and poorly maintained, including vehicles with: seats that would not lock and slid while driving; non-functional windows and doors that could only be opened from the outside; no air conditioning; persistent dashboard check engine and brakes warning lights; defective brakes requiring Plaintiff to significantly alter her driving; and non-functional headlights.

34. Defendant required Plaintiff and other employees to complete a daily vehicle checklist via a mobile app or link, identifying problems such as warning lights and other safety issues. Despite these daily reports, Defendant routinely required Plaintiff to continue driving unsafe vehicles and did not timely repair.

35. When vehicles overheated or ran low on coolant, Plaintiff was required to stop on freeways or public roads to add coolant to the vehicle despite expressing safety concerns about the risk of injury.

36. Defendant frequently required Plaintiff to front gas expenses for Defendant's vehicles out-of-pocket. Defendant delayed reimbursement for weeks, sometimes months.

37. Defendant required Plaintiff to pay parking fees at customer locations, particularly customers living in condos with hourly parking fees for non-residents.

38. Defendant treated customer cash tips as parking fee reimbursement. This deprived Plaintiff of tip income and forced her to pay business expenses from money that should have been her gratuity.

39. Plaintiff and other cleaners were frequently informed by customers that they had tipped through Defendant payment system or app, yet Plaintiff never received those tips.

40. Defendant kept customer tips paid through their mobile app that were intended for cleaners. Defendant systematically would not distribute these customer tips to Plaintiff and other PAGA class members.

41. Under Defendant's bonus plan, Plaintiff was also entitled to a $50 bonus for each five-star customer review or when recognized on "presentation days" as a top cleaner or for providing outstanding customer service.

42. Plaintiff received multiple five-star reviews and was recognized several times, yet Defendant repeatedly failed to pay the promised $50 bonuses.

43. Plaintiff's received assurances from management that payment would be made "next week," but never the received the bonuses.

44. Defendant paid Plaintiff exclusively by paper check and did not offer direct deposit. Plaintiff did not receive paystubs.

45. Plaintiff's counsel made several requests for paystubs and records of hours worked, but as of the date of filing has only received employee handbook/company-policies/Plaintiff's application-related forms from Defendant.

46. Defendant frequently failed to timely provide paychecks on scheduled paydays, including: telling Plaintiff her check would be "under the door" and then failing to leave it; failing to answer calls or open the office, forcing Plaintiff to wait until her next scheduled workday to obtain her paycheck; and instances where Defendant claimed checks had been left, but claim it must have been taken, shifting blame to co-workers.

47. Plaintiff and other cleaners were frequently subjected to time pressure and micromanagement. Defendant required Plaintiff to: perform multiple house cleanings per day (typically 3-5); continuously and constantly texting updates (via Slack app) throughout each job (e.g., "bathroom done," "kitchen done," "started mopping," "vacuuming now"); and field frequent calls from Defendant demanding that Plaintiff "hurry up" and questioning whether she could make it to the next customer on time.

48. Defendant's managers regularly spoke to Plaintiff in a condescending manner, including yelling at Plaintiff over the phone while customers were listening. This conduct caused Plaintiff embarrassment and emotional distress.

49. Defendant often required Plaintiff to work through meal and rest breaks, including: pressuring Plaintiff to finish a job without taking lunch; forcing Plaintiff to take her lunch on-site in the car, depriving her of a meaningful opportunity to obtain food off-site; messaging Plaintiff during her meal periods to ask if she was "back" or instructing her to start driving to the next house, thereby discouraging full use of her breaks.

50. Defendant required Plaintiff to work beyond her scheduled shift. Defendant's timekeeping phone app would automatically cut off or prevent clock-out after certain hours, forcing Plaintiff to rely on manual corrections by Defendant owner.

51. Plaintiff often had to send screenshots or messages showing the exact time she finished work. Plaintiff believes her manager ignored her timecard correction and systematically failed to record or pay for her actual regular and overtime hours worked.

52. Defendant had constant turnover among its cleaners, with employees frequently leaving due to the poor working conditions. Only a small group of cleaners remained long-term, with some of them being promoted into office roles.

53. Plaintiff and her co-workers were predominantly young women working alone inside strangers' homes, sometimes late at night, with minimal safety protections. Plaintiff was left to navigate unsafe locations, unreliable vehicles, and late-night cleaning by herself.

54. During her employment, Plaintiff became pregnant. At first, Plaintiff continued working without disclosing her pregnancy, but as the work became too physically demanding and she became ill on the job. Plaintiff informed Defendant via the company's work messaging app, that she was pregnant. Defendant acknowledged awareness of the pregnancy.

55. After Plaintiff disclosed her pregnancy, Defendant made no adjustments to her assignments or working conditions. Plaintiff was still required to: drive unsafe, non-air-conditioned vehicles, even in temperatures reaching about 120 degrees in the car; carry heavy loads, including metal dollies loaded with several boxes of cleaning supplies, multiple bottles of liquid cleaning agents, and a large backpack vacuum—collectively approximately 50 pounds—often up and down stairs and into multi-story homes; and to continue working under strict time pressures with more hostile monitoring.

56. While pregnant, Plaintiff experienced significant physical strain at work, including feeling that she might pass out due to heat and exertion.

57. Plaintiff communicated these issues to Defendant and on multiple occasions, repeatedly requested to leave early or go home because she felt physically unable to continue working.

58. In response to Plaintiff's pregnancy-related performance concerns and need for rest, Defendant—primarily through Defendant's manager—responded with threats and reduced hours, including: suggesting that leaving due to pregnancy-related symptoms would result in a disciplinary write-up for "abandoning" her job, and treating her requests for relief as a performance problem rather than a legitimate health and pregnancy-related concern.

59. Defendant's manager herself was also pregnant during part of this time, but worked in the office rather than in the field. Defendant's manager did not extend understanding to Plaintiff and was instead one of the primary sources of hostility, pressure, and discipline toward Plaintiff.

60. As Plaintiff's pregnancy progressed and the work became increasingly unsafe and difficult, Plaintiff requested an accommodation in the form of "light duty" or a position in the office away from heavy lifting and chemical exposure.

61. Plaintiff initially requested to speak with Human Resources ("HR") to understand her options for light duty, disability, or maternity leave. Plaintiff was told that Defendant's manager herself functioned as HR and that Plaintiff was already "talking to HR" by speaking with Defendant's manager.

62. Plaintiff explained that the physical demands of the job, combined with her pregnancy, were becoming too much.

63. Plaintiff also told Defendant's manager about her concerns about exposure to toxic cleaning chemicals while pregnant.

64. Plaintiff requested a light duty or a less physical role.

65. Defendant had various non-field roles that Plaintiff could have performed, including: office work involving communicating with cleaners to track progress and schedule jobs (tasks similar to what Plaintiff was already doing on her phone in the field); a role like that of another employee who ran errands, refilled supplies, and refueled gas; other administrative and coordination duties performed by office staff.

66. Plaintiff also had prior administrative/clerical experience, where she maintained inventory records, tracked customer orders, managed locations and shipments, and kept files on returning customers.

67. Defendant was aware that Plaintiff was experienced-in and fully capable of effectively performing a wide variety of typical office work (administrative/clerical) work such as using Defendant's computer system, typing, data-entry, managing orders, dispatching cleaners, answering phones, and communicating with customers.

68. After Plaintiff requested light duty and/or an alternate position, Defendant's manager stated she would need to speak with Defendant's owner and would get back to Plaintiff.

69. Approximately a week later, Defendant's manager informed Plaintiff via written messages (Slack phone app) that there was no light duty available and no office position for her.

70. Defendant's managed stated that the office roles were "already filled" or were positions that had to be "worked up to," and if Plaintiff did not feel well enough to perform the cleaning job, she could take time off and come back when she felt better.

71. Defendant's manager further told Plaintiff that Defendant would "clear [her] off the schedule starting next week," effectively removing her from all upcoming shifts and terminating her.

72. Plaintiff was not provided any formal paperwork regarding pregnancy leave, disability leave, or any statutory leave rights.

73. Defendant's actions violate the state and federal pregnancy discrimination laws, in addition to the protections under Defendant's employee contract.

74. Defendant did not: provide Plaintiff with written notice of her rights under California or federal law related to pregnancy, disability, or family leave;

offer or discuss any leave program or benefits; or engage in a meaningful interactive process to identify reasonable accommodations.

75. After Plaintiff was removed from the schedule, Defendant represented that Plaintiff's job would be there when she felt "better." However, when Plaintiff later messaged Defendant—checking in regarding her health as Defendant had requested—they did not respond.

76. Plaintiff understood that she had been pushed out of her job and terminated as a direct result of her pregnancy, her pregnancy-related limitations, and her requests for accommodation and light duty.

77. Following the loss of her job with Defendant, Plaintiff attempted to file a claim for unemployment benefits with California's Employment Development Department ("EDD").

78. EDD informed Plaintiff by telephone that her Social Security number showed no employment with Defendant and therefore she could not proceed with the claim. Consequently, the pregnant Plaintiff could not receive unemployment benefits and her family had to rely solely on her automotive mechanic husband's wages to support the family.

79. On information and belief, Plaintiff believes Defendant is engaged in a tax fraud scheme where many of Defendant's employees are not being reported to EDD in order to evade paying state and federal payroll taxes.

80. Plaintiff seeks punitive damages due to the emotional stress caused by Defendant's tax fraud, wrongful termination, and unpaid wages violation resulting in her not receiving unemployment benefits.

81. Plaintiff received W-2 forms, evidencing that Defendant had purported to treat her as a W-2 employee. However, EDD had no corresponding record of her employment.

82. Due to Defendant failing to properly report Plaintiff's wages and employment to the appropriate state agencies—raising issues of tax fraud—the pregnant Plaintiff was deprived of any ability to claim unemployment benefits.

83. Defendant markets itself as benevolently hiring its cleaners as W-2 and not contractors like its less caring competitors try to do.

84. As stated on Defendant's "Frequently Asked Questions" (FAQ) portion of the website as of the date of filing:

> **Are the people you send into my home independent contractors or unemployed individuals you pay part-time?**
>
> Never. Absolutely not. We have found that those whom are unemployed, do this on the side or as independent contractors as most of our competitors are or utilize **never care or are as concerned as we care**. Since we are one of the few companies that thoroughly back ground check, train, supervise and pay our employees well in the industry, you can rest assured you are in good hands when you hire Pink Sponge for your cleaning needs.
>
> …

> **What is the difference between hiring an Independent Contractor like Handy Inc. uses or other companies use from a company like Pink Sponge who has only Employees?**
>
> This is a great question that few know the answers to. A company or individual who utilizes independent contractors like Handy Inc. as well as others are **restricted by law** in not only what they can ask of these contractors, but also in determining who they are, when they can work and what will happen in the event of a problem or injury. Many times these individuals **do not pay taxes**, are inexperienced, do not have any insurance, are flight-risks and can even send others to do the work since the companies they work for do not want to pay them well and take care of them. Here are Pink Sponge we are not only proud of our Employees and how we hire them, train them and supervise them but also how much we truly care about them. You will never find us engaging in these practices let alone sending those who are into your home. [emphasis added; https://pink-sponge.com/faq/]

85. Despite going out of it way to disparage it competitors as hiring contractors to avoid taxes, on information and belief it appears Defendant was itself cheating both the government and its employees by not paying it cleaners as either W-2 employees or W-9 contractors.

86. On September 15, 2025, Plaintiff's counsel, pursuant to California Labor Code § 226, sent a request for Plaintiff's employment records. On October 17, 2025, Plaintiff's counsel sent a follow-up request for Plaintiff's employment records under California Labor Code § 226. The corporate address for PINK SPONGE is listed on California's Secretary of State business record website as the contact information for the registered agent of the corporation.

87. Since October 2025, Plaintiff's counsel has not received Plaintiff's paystub or timecards records, despite two letters and several back-and-forth emails with Defendant's owner repeatedly requesting these basic and legal required records.

88. Prior to filing, Plaintiff's counsel sent several follow-up email requests for Plaintiff's payroll records in a back-and-forth conversation with Defendant's owner with Plaintiff's counsel emailing follow-up requests on October 17, November 7, December 11, December 29, 2025, January 6, January 29, February 12, March 1, March 9, March 27, and March 29, 2026.

89. Plaintiff believes she only received one written disciplinary write-up, issued by Defendant's manager, purportedly for failing to continuously respond to texts and report each task in real time. This write-up occurred after Defendant's manager began showing hostility toward Plaintiff and after Plaintiff had difficulty keeping up due to her pregnancy and work demands.

90. After Plaintiff disclosed her pregnancy, Defendant's supervisors began to appear unannounced at Plaintiff's job sites (customers' houses) on a few occasions to inspect Plaintiff's work, despite Plaintiff continuing to receive good reviews. These surprise inspections, which went beyond ordinary initial training visits and were reasonably perceived by Plaintiff as efforts to find cause to discipline or terminate her due to her pregnancy.

91. Throughout her employment, Plaintiff personally observed and experienced a pattern of disregard for workers' rights, including: being bounced between managers; customers complaining about double charges, unresponsiveness from Defendant's owner, regarding illegal, improper fillings; and online Yelp reviews from other employees describing fake W-2 forms and failure to pay overtime.

92. Plaintiff did not resign voluntarily. Rather, Defendant knowingly subjected her to unsafe working conditions; refused to provide reasonable accommodations for her pregnancy, despite having available light-duty and office-type work; removed her from the work schedule and failed to respond when she attempted to follow up; and engaged in conduct that would cause a reasonable person in Plaintiff's position to feel compelled to leave her employment.

93. As a direct and proximate result of Defendant's actions, including pregnancy discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, unlawful wage and hour practices, and wrongful termination, Plaintiff has suffered lost wages and benefits, emotional distress, and other damages according to proof at trial.

94. Plaintiff alleges Defendants implemented and maintained a company-wide policy to pay non-exempt employees less than the applicable minimum wage by failing to pay employees for all hours worked. Defendants were aware of the

fact that under their system, Plaintiff regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

95. Plaintiff alleges Defendants also failed to provide overtime wages earned for all hours worked by Plaintiff in excess of eight hours per day and/or forty hours per week. Where overtime compensation was received at all, it was for fewer than all overtime hours worked and was paid at less than the amount required by California law.

96. Plaintiff alleges that in order to meet Defendants' workload requirement, Plaintiff often worked through meal periods and rest breaks.

97. Plaintiff alleges Defendants also failed to provide Plaintiff with all the required meal periods when they worked more than five hours in a day; and Defendants failed to pay Plaintiff a one-hour premium wage in lieu thereof.

98. Plaintiff and other Defendants' employees did not receive a second meal period when working shifts of 10 hours or more.

99. Labor Code Section 512 states that an "employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes" if and when such employees work more than 5 hours in any given workday. Labor Code Section 512 further requires two 30 -minute duty-free meal periods when an employee works more than 10 hours in any given workday.

100. Plaintiff alleges that Defendants' corporate policies, procedures, and uniform understaffing, were either written or institutionalized into each Defendant's labor practices, such that Plaintiff was not able to, or permitted to, take timely rest breaks or lunch periods, pursuant to the Labor Code, Industrial Welfare Commission Wage Order 5-2001, and other applicable Wage Orders.

101. Plaintiff alleges Defendants failed to provide Plaintiff with timely and accurate wage and hour statements.

102. Plaintiff alleges Defendants did not maintain adequate records pertaining to when Plaintiff began and finished each work period; meal/rest breaks; hours worked per day; hours worked per pay period; and applicable rates of pay for all regular hours and overtime.

103. Plaintiff alleges that Defendants have maintained and continue to maintain uniform practices and procedures which are in inconsistent with state and federal law.

104. Plaintiff alleges that Defendants engage in uniform policies and conduct, as alleged herein resulting in violations of Labor Code §§ 201, 202, 203, 204, 226, 226.7, 510, 1194, and 2750.5.

105. Plaintiff brings this action pursuant to Business and Professions Code §§ 17200-17208, seeking injunctive relief and restitution of all benefits obtained by Defendants by engaging in the unlawful conduct complained herein.

106. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued here in as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that Defendants designated herein as DOE(S) are legally responsible in some manner for the unlawful acts referred to herein.

107. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOE(S) when such identities become known.

108. Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and exercised control over the wages, hours, and working conditions of Plaintiff.

109. Plaintiff alleges on information and belief that Defendants operate as a joint employer and jointly issued policies and procedures for Plaintiff.

110. Plaintiff is informed and believe, and thereon allege that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and exercised control over the wages, hours, and working conditions of Plaintiff.

111. Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.

112. Defendants in all respects acted as the employer and/or joint employer of Plaintiff. Plaintiff is informed and believes and thereon alleges that at all times relevant to this action, the named Defendants and Defendants DOES 1 through 10 were affiliated, and were an integrated enterprise.

113. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct for the matters alleged herein.

114. Plaintiff is informed and believes and thereon alleges that each Defendant acted within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## COLLECTIVE ACTION ALLEGATIONS

115. Plaintiff brings this cause of action on behalf of herself and on behalf of all persons similarly situated, ("the class" or "FLSA class") as alleged herein. This action is brought and may properly be maintained as a collective action pursuant to the provisions of the Fair Labor Standards Act (29 U.S.C. 201, et seq.).

116. The proposed FLSA class Plaintiff seeks to represent is presently defined as follows:

> **Proposed Collective Action Class:**
>
> All of the current and former cleaners (also known as "maids") for Defendants within the four years prior to the date of the filing of this Complaint through the date of the final disposition of this action.

117. Plaintiff is a member of the proposed class.

118. There is a well-defined community of interest in the litigation and the class is ascertainable.

A. **Numerosity**: The class is so numerous that individual joinder of all members is impractical under the circumstances of this case.

B. **Common Questions Predominate**: Common questions of law and fact exist as to all class members, and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

i. What were and are the policies, programs, practices, procedures and protocols of Defendants regarding class members' actual work and tasks, and their job duties irrespective of job titles;

ii. Whether Defendants violated the FLSA by their practices whereby class members were working off-the-clock and without compensation;

iii. Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding rest periods for class members;

iv. Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding lunch breaks for class members;

v. What were and are the policies, programs, practices, procedures and protocols of Defendants regarding furnishing to the class members, upon each payment of wages, itemized statements required by Labor Code section 226;

vi. Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding furnishing to the class members, upon each payment of wages, itemized statements required by Labor Code section 226;

vii. Whether Defendants violated California's Business & Professions Code sections 17200 *et seq.* by their policies, programs, practices, procedures and conduct referred to in this cause of action;

viii. Whether Defendants obtained voluntarily waivers with consent and full disclosure, and whether a written signed waiver is effective as to all future meal and rest periods;

ix. The proper measure of damages sustained and the proper measure of restitution recoverable by members of the California class; and,

x. Additional common questions of law and fact may develop as the litigation progresses.

C. **Typicality**: Plaintiff's claims are typical of the claims of the class. Plaintiff and other class members sustained losses, injuries and damages arising out of the Defendants' common policies, programs, practices, procedures, and course of conduct referred to in each cause of action and throughout this Complaint, which were applied uniformly to class members as well as Plaintiff. Plaintiff seeks recoveries for the same types of losses, injuries, and damages as were suffered by the other class members as well as Plaintiff.

D. **Adequacy**: Plaintiff and her counsel will fairly and adequately protect the interests of the class. Plaintiff have no interest that is adverse to the interests of the other class members.

E. **Superiority**: A FLSA class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Also, because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public of adjudication of individual litigation and claims would be substantial, and substantially more than if the claims are treated as class action. Individual litigation and claims would also present the potential for inconsistent or contradictory results.

F. **Public Policy Considerations**: Defendants and other employers throughout the state violate wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are often fearful of bringing claims because doing so can harm their employment and future efforts to secure employment. FLSA provides class

members who are not named in the complaint a degree of anonymity that allows for vindication of their rights while eliminating these risks, or at least enormously reducing them.

## V.

## CAUSES OF ACTION

### First Cause of Action

### Violations of the Fair Labor Standards Act (“FLSA,” 29 U.S.C. 201, *et seq*.)

119. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 29-51, 94-105.

120. Plaintiff is informed and believe, and thereon alleges, that Defendants have required collective class members, as part of their employment, to work without receiving the minimum wage for all hours worked, under 29 U.S.C. § 206(a). That section provides the following: “Every employer shall pay to each of their employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [minimum wage].

121. Plaintiff is informed and believes, and thereon alleges that Defendants have required, or require collective class members, as part of their employment, to work without compensation.

122. Plaintiff alleges Defendant violated FLSA and California labor laws by: failing to pay minimum wage for all hours worked; not providing overtime compensation; requiring off-the-clock work; failing to provide required meal periods; manipulating time records to show breaks that weren't taken; refusing to pay accrued vacation hours; and not providing second meal periods for shifts over 10 hours.

123. Plaintiff alleges Defendants implemented and maintained policies to pay non-exempt employees less than the applicable minimum wage by failing to pay for hours worked.

124. Defendants were aware of the fact that under their system, Plaintiff and FLSA class members regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

125. During the liability period, Defendants have routinely failed to pay Plaintiff the minimum wage required under California and federal law. Plaintiff's timecards and pay stubs did not list her actual regular and overtime hours worked.

126. Plaintiff alleges that Defendants systematically violates the Fair Labor Standards Act by failing to provide Plaintiff and other FLSA class members with minimum wage for all hours worked.

127. Defendants' violations of the FLSA were willful and are ongoing.

128. Plaintiff proposes to undertake appropriate proceedings to have the collective class members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and given the opportunity to join this action as Plaintiff, pursuant to 29 U.S.C. § 216(b), by filing written consents / joinders with the Court.

129. Attached hereto as **Exhibit A is** Plaintiff Juarez's signed Fair Labor Standard Act Consent to Join form for this collective action.

130. As a result of Defendants' unlawful conduct, Plaintiff and the collective class members have suffered damages as set forth herein.

131. As a result of the foregoing, Plaintiff seeks judgment against Defendants on their own behalf, and on behalf of those collective class members similarly situated who file written consents to join in this action, for all unpaid wages owed by Defendants to Plaintiff and the collective class members, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interests, and reasonable attorneys' fees, pursuant to, *inter alia*, 29 U.S.C. § 216(b).

132. WHEREFORE, Plaintiff seeks relief as described herein and below.

/ / /

/ / /

/ / /

/ / /

## Second Cause of Action

**Failure to Accommodate**
**(Gov Code § 12940 and Code of Regs. § 11068)**

133. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 52-93

134. Defendants failed to engage in a good faith interactive process to address Plaintiff's accommodation requests.

135. Plaintiff alleges that her request for light duty was a reasonable request for accommodation under FEHA, based on her pregnancy.

136. Plaintiff alleges that Defendants, and each of them, failed to accommodate Plaintiff by failing to provide Plaintiff with a light duty assignment.

137. As an actual and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount subject to proof, but which is in excess of the jurisdictional minimum of this Court, and which includes but is not limited to, accrued but unpaid salary, bonuses and benefits (including pre-judgment interest thereon), front pay, severance pay, disability, and damages for emotional distress.

138. Plaintiff seeks attorneys' fees and costs pursuant to California Government Code Section 12965(b).

## Third Cause of Action

**Wrongful Termination in Violation of Public Policy**
**(Gov Code § 12940, Labor Code § 132(a), and**
**Cal. Code Regs. Tit. 2, § 11042)**

139. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 52-93.

140. Plaintiff alleges Defendants wrongfully terminated Plaintiff's employment without good, just, or legitimate cause. Rather, Defendant's termination of Plaintiff's employment was arbitrary, unjust, and done in bad faith.

141. Plaintiff alleges her termination was done in retaliation for and as a proximate result of Plaintiff's pregnancy and requests to Defendant's management.

142. As a proximate result of Defendants' wrongful conduct, Plaintiff had suffered damages in an amount subject to proof, but which are in excess of the jurisdictional minimum of this Court, and which include but are not limited to, accrued but unpaid salary, bonuses and benefits (including pre-judgment interest thereon), front pay, back pay, severance pay, and damages for emotional distress.

/ / /

/ / /

/ / /

/ / /

## Fourth Cause of Action

**Violations of the Pregnancy Discrimination Act (42 U.S.C. § 2000 et seq., Civil Rights Act section 701)**

143. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 52-93.

144. Plaintiff was a qualified individual under Pregnancy Discrimination Act (PDA) of 1978, amending the Civil Rights Act of 1964. 42 U.S.C. § 2000(e) et seq.

145. Under the PDA, it is unlawful for an employer to discriminate against a qualified individual in regard to job application procedures, hiring, advancement, discharge, compensation, termination, reasonable accommodations or other terms, conditions, and privileges of employment due to pregnancy (42 U.S.C. § 2000(e)).

146. Plaintiff requested to be assigned to an alternative position, which would have accommodated her pregnancy. Plaintiff was told no alternate positions were available.

147. Defendant failed to engage in a good faith, interactive process to determine effective reasonable accommodations for Plaintiff, as required under the PDA and California law.

148. Defendant discriminated against Plaintiff by terminating her employment in retaliation for asserting her rights to reasonable accommodation under the PDA. Cal. Gov. Code § 12940.

149. Defendant's actions were willful, intentional, and in reckless disregard of Plaintiff's rights under the PDA.

150. Plaintiff suffered an adverse employment action when she was terminated.

151. There was a causal connection between the protected activity and the adverse employment action.

152. The extremely close temporal proximity between Plaintiff's protected activity and her termination strongly suggests a causal connection between the two events.

153. WHEREFORE, Plaintiff seeks relief as described herein and below.

## Fifth Cause of Action

### Discrimination in Violation of Public Policy (Gov. Code, §12940)

154. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 52-93.

155. Plaintiff requested to be assigned to alternative positions which would have accommodated the injury. Plaintiff was told no alternate positions were available.

156. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including back pay, reimbursement of out-of-pocket expenses and any such other relief that this Court deems proper.

157. As an actual and proximate result of Defendant's willful and intentional discrimination, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

158. As an actual and proximate result of Defendants' aforementioned acts, Plaintiff suffered physical injury. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

159. As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other emotional distress. Plaintiff claims general damages for mental distress in an amount according to proof at time of trial.

## <u>Sixth Cause of Action</u>

### Failure to Pay Minimum Wage
### (Labor Code §§ 1182.12, 1194, 1197 and 1197.1, IWC Wage Orders)

160. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 29-51, 94-105.

161. During the liability period, Defendants have routinely failed to pay Plaintiff for each hour suffered or permitted to work.

162. Throughout Plaintiff's employment, Plaintiff would regularly work off-the-clock to avoid accruing regular and overtime hours.

163. At all relevant times, the Industrial Welfare Commission Wage Orders contained in Title 8 of the Code of Regulations (Wage Orders) applied to Plaintiff in her capacity as an employee of Defendants. The Wage Orders and California law provided, among other things, that employees must receive minimum wage earnings for all hours worked.

164. Plaintiff pay stubs did not list her accurate regular and overtime hours worked. Plaintiff worked unpaid hours for Defendants as a part of systematic pattern of Defendants' failing to pay employees for all hours worked.

165. During the liability period, Defendants have routinely failed to pay employees the minimum wage required under California law.

166. Labor Code Section 1194 provides in pertinent part: "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

167. Labor Code Section 1197 provides that the "minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

168. Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1 and the applicable Wage Order, Wage Order No. 8, by willfully failing to pay all minimum wages due to Plaintiff.

169. Plaintiff seeks all actual, consequential and incidental losses and damages, including, unpaid minimum wages, interest thereon, attorneys' fees, and costs.

170. WHEREFORE, Plaintiff seeks relief as described herein and below.

/ / /

/ / /

/ / /

/ / /

## Seventh Cause of Action

**Failure to Pay Wages at California Overtime Rate (Lab. Code § 1194, IWC Wage Orders, and Related Violations)**

171. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 29-51, 94-105.

172. Throughout Plaintiff's employment, Plaintiff would regularly work off-the-clock without accruing overtime hours.

173. Plaintiff alleges Defendants failed to provide overtime wages earned for all hours worked by Plaintiff in excess of eight (8) hours per day and/or forty (40) hours per week. Where overtime compensation was received at all, it was for fewer than all overtime hours worked and was paid at less than the amount required by California law.

174. Throughout the liability period, Plaintiff worked in excess of forty (40) hours per week and/or in excess of excess of eight (8) hours per day.

175. Defendants were actually aware that Plaintiff was regularly working overtime virtually during the liability period, but Defendants failed and refused to pay Plaintiff for her overtime hours. Throughout the period applicable to this cause of action, Defendants did not pay Plaintiff at the required overtime rate.

176. Pursuant to Labor Code section 1194, Plaintiff is entitled to recover unpaid overtime compensation, and other unpaid wages, interest, plus attorneys' fees and costs.

177. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and attorneys' fees and costs, pursuant to statute and other applicable law.

178. WHEREFORE, Plaintiff seeks relief as described herein and below.

**<u>Eighth Cause of Action</u>**

**Failure to Provide Meal Periods**
**(Labor Code §§ 226.7 and 512)**

179. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 29-51, 94-105.

180. Throughout the period applicable to this cause of action, California law, as set forth in relevant part by the Industrial Welfare Commission Wage Order No. 8 at section (11), provided as follows:

> i. No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes

. . .

ii. If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

181. Labor Code Section 512 states that an "employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes" if and when such employees work more than 5 hours in any given workday. Labor Code Section 512 further requires two 30 -minute duty-free meal periods when an employee works more than 10 hours in any given workday.

182. Labor Code section 226.7 requires payment of one (1) hour of pay in lieu of each meal periods not provided by the employer.

183. Throughout the period applicable to this cause of action, Defendants failed to consistently allow and provide one or more duty-free 30-minute meal periods in violation of Labor Code section 510 and Wage Order No. 8, as required by California law.

184. By virtue of this unlawful conduct, Plaintiff is entitled to compensation as stated above, plus interest, attorneys' fees, costs and other applicable relief.

185. Throughout the period applicable to this cause of action, Defendants required Plaintiff to work during meal periods mandated by the applicable orders

of the Industrial Welfare Commission. Therefore, Plaintiff is entitled to be paid as stated in Labor Code section 226.7, plus interest, attorneys' fees, costs and other applicable relief.

186. Plaintiff did not voluntarily or willfully waive rest and/or meal periods and were regularly required to work through meal periods. Defendants failed to meet the requirements for lawful on-duty meal periods and/or instituted a course of conduct that created a working environment in which non-exempt employees were incapable of taking rest and/or meal periods. As such, non-exempt employees were intimidated or coerced into waiving meal periods, and any written waivers were obtained without full disclosure and are thus involuntarily and without consent.

187. WHEREFORE, Plaintiff seeks relief as described herein and below.

## <u>Ninth Cause of Action</u>

**Failure to Provide Rest Breaks**
**(Labor Code §§ 226.7 and 512)**

188. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 29-51, 94-105.

189. Plaintiff alleges Defendants also failed to provide Plaintiff with all the required rest breaks. Additionally, Defendants failed to pay Plaintiff a one-hour premium wage in lieu thereof.

190. Wage Order No. 8, Section 12, requires each employer to provide each of Plaintiff with at least one rest period of 10-minutes rest time for each 4 hours, or major fraction thereof, that each such employee works during each workday.

191. Labor Code Section 226.7 provides that if an employer fails to provide an employee with a rest period in accordance with Wage Order No. 8, the employer must pay such employee(s) one additional hour of pay at the employee's regular rate of pay for each day that such a rest period was not provided.

192. By Defendant's failure to provide rest periods for every four (4) hours or major fraction thereof worked per workday by non-exempt employees, and failing to provide one (1) hour's pay in lieu thereof, as alleged above and herein, Defendants willfully violated the provisions of Labor Code sections 226.7 and IWC Wage Orders at section (12).

193. By failing to keep adequate time records required by sections 226 and 1174(d) of the Labor Code and IWC Wage Order at section (7), Defendants have injured Plaintiff and made it difficult to calculate the unpaid rest and meal period compensation due Plaintiff. On information and belief, Plaintiff alleges that Defendants' failure to maintain accurate records was willful.

194. As a result of the unlawful acts of Defendants, Plaintiff was deprived of premium wages in amounts to be determined at trial, and is entitled to an accounting and recovery of such amounts, plus interest and penalties thereon,

attorneys' fees, and costs, under the Labor Code and the applicable IWC Wage Orders.

195. WHEREFORE, Plaintiff seeks relief as described herein and below.

## <u>Tenth Cause of Action</u>

### Failure to Pay All Wages at Termination
### (Labor Code §§ 201- 203)

196. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 29-51, 94-105.

197. Plaintiff alleges that Defendants has systematically failed pay Plaintiff all wages owed at termination.

198. Defendants failed to pay Plaintiff, without abatement, all wages (as defined by applicable California law) within the time required by applicable California law. Defendants' failure to pay said wages within the required time was willful within the meaning of Labor Code section 203.

199. Defendants failed to timely pay all wages due as penalties pursuant to Labor Code sections 201, 202, 203.

200. Therefore, Plaintiff is entitled to one day's wages for each day he was not timely paid all said wages due, up to a maximum of thirty days' wages for each employee.

201. WHEREFORE, Plaintiff seeks relief as described herein and below.

## Eleventh Cause of Action

### Failure to Reimburse Business Expenses
### (Labor Code § 2802)

202. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 36-43.

203. Labor Code section 2802(a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

204. Throughout the class period, class members incurred expenditures in direct consequence of their duties as Defendants' employees and/or their obedience to Defendants' directions, for which they received no reimbursement.

205. Labor Code section 2802(b) provides for interest on all awards made by a court from the date upon which the employee incurred the necessary expenditure or loss.

206. Labor Code section 2802(c) provides that "necessary expenditures or losses" includes all reasonable costs including attorney's fees incurred by the employee to enforce the rights afforded under this provision.

207. Defendants failed to reimburse employees for expenses they paid that should have been borne by their employer, which constitutes a violation of California Labor Code Section 2802.

208. By failing to reimburse for expenses paid, Defendants acted maliciously with the wrongful intention of causing injury and hardship to class members by reaping economic gain at the class members' expense, in willful and conscious disregard of class members' statutory and regulatory rights.

209. Plaintiff and the class members are entitled to recover an award from Defendants of the full amount of all unreimbursed necessary expenditures, plus interest and reasonable attorneys' fees.

210. WHEREFORE, Plaintiff and the class she seeks to represent request relief as described herein and below.

## Twelfth Cause of Action

**Violation of Labor Code Section 2699**
**(California Private Attorney General Act ("PAGA"))**

211. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all paragraphs of this Complaint as though fully set forth herein, in particular paragraphs 29-51, 94-105.

212. Plaintiff filed a Private Attorney General Act ("PAGA") complaint online with the California's Labor and Workforce Development Agency (LWDA)

on approximately October 17, 2025, and served Defendants by certified mail as prescribed by the Labor Code.

213. California IWC Wage Order 4-2001 requires an employer to pay each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

214. Defendants failed to pay Plaintiff and other aggrieve employees at least minimum wage for all hours worked in violation of Labor Code sections 1194 and 1197.

215. During the liability period, Defendants have routinely failed to pay Plaintiff the minimum wage required under California law.

216. Plaintiff, by virtue of her employment with Defendants are aggrieved employees with standing to bring an action under the PAGA. Plaintiff has satisfied all prerequisites to serve as a representative of the general public to enforce California's labor laws, including, without limitation, the penalty provisions identified in Labor Code section 2699.5.

217. Since the LWDA took no steps within the time period required to intervene and because Defendants took no corrective action to remedy the allegations set forth above, Plaintiff as a representative of the people of the State of California, seeks any and all penalties otherwise capable of being collected by

the Labor Commission and/or the Department of Labor Standards Enforcement ("DLSE"). This includes each of the following, as set forth in Labor Code Section 2699.5, which provides that Section 2699.3(a) applies to any alleged violation of the following provisions: Sections 558, 1194, 1197, 1197.1, and 1199.

218. Labor Code section 2699 provides for civil penalties of $100 per employee per pay period for the initial violation and $200 per employee per pay period for each subsequent violation.

219. Plaintiff, as a representative of the general public, seek to recover any and all penalties for each and every violation shown to exist or to have occurred during the one-year period before Plaintiff filed Notice with the LWDA of her intent to bring this action, in an amount according to proof, as to those penalties that are otherwise only available to public agency enforcement actions. Funds recovered will be distributed in accordance with the PAGA, with at least 75% of the penalties recovered being reimbursed to the State of California and the LWDA.

220. As a result of the acts alleged above, Plaintiff and the collective action class she seeks to represent seek penalties under Labor Code §§ 201-203, 212, 226, 226.7, 510, 1182.12, 1194, 1197, and 1197.1.

221. Plaintiff, as a representative of the general public, seeks to recover reasonable attorney's fees and costs under the PAGA, Labor Code section 2699(g)(1).

222. WHEREFORE, Plaintiff seeks relief as described herein and below.

**<u>Thirteenth Cause of Action</u>**

**Violation of Unfair Competition Law**
**(Bus. and Prof. Code § 17200 *et seq.*)**

223. Plaintiff, on behalf of herself and other aggrieved employees, incorporates all previous paragraphs of this Complaint as though fully set forth herein.

224. Plaintiff alleges that Defendants has systematically failed pay Plaintiff all wages owed at termination.

225. Plaintiff brings this action on behalf of herself pursuant to Business and Professions Code sections 17200 *et seq.* Defendants' conduct alleged above constitutes unlawful business acts and practices in violation of Business & Professions Code sections 17200 *et seq.* Defendants engaged in unfair competition in violation of the UCL by violating, *inter alia,* each of the following laws, Labor Code sections 201, 202, 203, 226, 226.7, 226.8, 510, 512, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 1199, and 2802, and applicable Wage Orders, including Wage Order No. 5 (housekeeping services).

226. Defendants' course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants' conduct described herein violates

the policy or spirit of such laws or otherwise significantly threatens or harms competition.

227. The harm to Plaintiff in being wrongfully denied lawfully earned wages outweighs the utility, if any, of Defendants' policies or practices and, therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of the UCL.

228. The unlawful and unfair business practices and acts of Defendants, and each of them, described above, injured Plaintiff in that he was wrongfully denied the payment of earned wages.

229. Plaintiff seeks restitution in the amount of the respective unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, or eight hours in a day, and double the regular rate of pay for work performed in excess of twelve hours per day and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

230. Pursuant to Business and Professions Code sections 17200 *et seq.*, for the statute of limitations period covered by this cause of action, Plaintiff is entitled to restitution for at least the following: the unpaid withheld and retained by Defendants referred to above.

231. Plaintiff, and the general public, are also entitled to permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct referred to above.

232. Defendants are also liable to pay attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable law, and costs. Plaintiff also seeks recovery of attorneys' fees and costs of this action to be paid by Defendant, as provided by the UCL and California Labor Code §§ 218, 218.5, and 1194.

233. WHEREFORE, Plaintiff seeks relief as described herein and below.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself prays for relief as follows:

1. For civil penalties pursuant to Labor Code Sections 226(e), 226.8(b), 226.8(c), 1174.5, and 1197.1;

2. For compensatory damages representing the amount of backpay owed to Plaintiff for wrongful termination and discrimination;

3. For compensatory damages representing the amount of unpaid wages owed to Plaintiff;

4. For compensatory damages pursuant to Labor Code Section 226.7 for missed meal and rest breaks;

5. For compensatory damages pursuant to Labor Code Section 2802;

6. For reasonable attorneys' fees and costs pursuant to Labor Code Sections 226(e), 1194, and 2802(c);

7. For attorneys' fees and costs pursuant to California Government Code section 12965(b).

8. For such general and special damages as may be appropriate;

9. For such punitive damages in light of Defendant's tax fraud and the emotional stress caused by Defendant's failing to report Plaintiff's wages to California's Employment Development Division, resulting in the pregnant Plaintiff being unable to apply for unemployment benefits;

10. For liquidated damages as authorized pursuant to Labor Code Sections 1194.2;

11. For waiting time penalties and civil penalties for failing to pay all wages termination;

12. For pre-judgment interest;

13. For restitution as described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above;

14. For permanent injunctive and declaratory relief described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above;

15. A declaratory judgment that the practices complained of herein are unlawful under California state law;

16. Attorneys' fees and costs of suit, including expert fees pursuant to California Labor Code §§218.5, 1194, and Code Civ. Proc. §1021.5; and

17. Such other injunctive and equitable relief as the Court may deem proper.

**DATED:** April 2, 2026

**NUNES LAW GROUP, APC**

*Anthony J. Nunes*

By: Anthony J. Nunes, Esq.
Attorneys for Plaintiff ZOE EVE JUAREZ